IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL S. MCLAIN and ROSALEE
JANETTE MCLAIN,

        Plaintiffs,

v.                                                          Case No. 25-04036-JWB

BOARD OF COUNTY COMMISISONERS
OF SEDGWICK COUNTY, KANSAS, et al.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants Mayor of Goddard, City Facebook Administrator, and the City of Goddard's (hereinafter "Goddard Defendants") motion to dismiss (Doc. 68.) The motion is fully briefed and ripe for decision. (Doc. 69, 71, 79.) This motion is GRANTED for the reasons stated herein. As part of its analysis the court also DENIES as moot Goddard Defendants' motion to strike a surreply. (Doc. 82.) The court also DENIES outstanding applications for entry of default, (Docs. 59, 63, 64), a motion for alternative service, (Doc. 66), and a motion to strike an answer by Defendants Megan Baugh and SG Communities (hereinafter "Leasing Defendants"). (Doc. 77.) Finally, the court DENIES Plaintiffs' motion for leave to file conventional exhibits. (Doc. 78.)

**I.    Facts and Procedural History**

Plaintiffs Michael and Rosalee McClain filed this lawsuit on April 7, 2025, alleging discrimination and civil rights violations against various city and county officials. (Doc. 1.) Over the ensuing several months, Plaintiffs amended their complaint three times and have struggled to properly serve the various Defendants. (Docs. 37, 40-48, 51-53, 55-57, 60, 65.) The Goddard

1

Defendants have been properly served and have filed a motion to dismiss in lieu of filing an answer as permitted by Federal Rule of Civil Procedure ("FRCP") 12(b). (Doc. 68.)

Plaintiffs bring this lawsuit alleging lease violations by their landlord and civil rights violations by the City of Goddard and Sedgwick County. (Doc. 37 at 1–5.) Plaintiffs claim that a registered sex offender moved into their mobile home community in violation of a covenant within their lease. (*Id.* at 5.) Plaintiffs objected strongly to this, as they contend that lease provision is part of the reason they had set out to live at this community. (*Id.* at 6.) Plaintiff Michael McLain allegedly got into an altercation with the alleged registered sex offender. (*Id.*) A confrontation with Sedgwick County sheriff's deputies ensued and McClain was ultimately arrested. (*Id.* at 6-7.) Mr. McClain explains that he has post-traumatic stress disorder ("PTSD"), and that certain actions by the deputies during the confrontation triggered symptoms of PTSD. (*Id.* at 7.) Plaintiffs claim that they tried to inform the deputies of Mr. McClain's condition. (*Id.* at 8.) This allegedly entitled Plaintiffs to reasonable accommodations under the ADA. (*Id.* at 7.) According to Mr. McClain, those accommodations were never made, before, during, or after his arrest. (*Id.* at 7.)

Sometime after his arrest, Plaintiff Michael McClain was allegedly blocked from accessing or posting on a Facebook page administered by the City of Goddard. (*Id.* at 12.) He claims that this was in retaliation for his complaints about the alleged sex offender in his community and his assertion of rights under multiple federal statutes before, during, and after his arrest by Sedgwick County. (*Id.*) Plaintiffs' complaints against the City of Goddard are premised upon an alleged First Amendment violation stemming from the City's blocking of Mr. McClain on Facebook. The Goddard Defendants move to dismiss four counts of the Third Amended Complaint that pertain to them. (Doc. 37.) The court grants this motion.

The court also addresses Plaintiffs' attempts to serve Defendant Megan Baugh and Defendant SG Communities (collectively the "Leasing Defendants"). Plaintiffs struggled to serve the Leasing Defendants, and a dispute has arisen about proper service, an allegedly untimely answer, and default. Plaintiffs moved for clerk's entry of default, (Docs. 59, 63, 64), for alternative service, (Doc. 66), to strike the Leasing Defendants' allegedly untimely answer, (Doc. 77), and to submit video recording exhibits as part of their motion to strike. (Doc. 78.) The court denies all of the aforementioned motions.

II.     **Standard**

  A.     **Motion to Dismiss**

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Given Plaintiffs' pro se status, the court construes the pleadings liberally, but it cannot act as their advocates or construct arguments on their behalf. *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

  B.     **Clerk's Entry of Default**

Before filing a motion for default judgment, a party must file a motion for entry of default with the Clerk of Court. Fed. R. Civ. P. 55(a). Only after the Clerk of Court issues an entry of default may a plaintiff file a motion for default judgment against a party that has failed to plead or

3

otherwise defend an action brought against it. Fed. R. Civ. P. 55(b)(2); *see also Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1119 n.4 (10th Cir. 2003) (distinguishing the Rule 55(a) entry of default from the Rule 55(b) grant of default judgment; *Watkins v. Donnelly*, 551 F. App'x. 953, 958 (10th Cir. 2014) ("Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a default judgment."). Entry of default is only granted "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed R. Civ. P. 55(a).

**III.     Analysis**

   **A.   Motion to Dismiss**

The Goddard Defendants perceive four claims against them: (1) 42 U.S.C. § 1983 claims under *Monell v. Dep't of Social Serv. of City of New York*, 436 U.S. 658 (1978); (2) claims under the Americans with Disabilities Act ("ADA"); (3) claims of retaliation under the ADA and Fair Housing Act ("FHA"); and (4) claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act. (Doc. 69.) The court considers the parties' arguments on each claim.

   *1.   42 U.S.C. § 1983 Claims Against Local Governments Through Monell*

Plaintiffs allege that the Goddard Defendants have a policy of retaliatory discrimination on its Facebook platforms. (Doc. 37 at 12.) While Plaintiffs' complaint is not a model of clarity, they appear to claim that Goddard's blocking of Mr. McClain from a Goddard Facebook page was a retaliatory violation of their First Amendment rights. In Plaintiffs' eyes, they complained about a sex offender in their community, attempted to assert rights under the ADA and FHA with their landlord and Sedgwick County, and then Goddard retaliated by blocking them on Facebook. The First Amendment guarantees the right of the people to speak freely; it is made applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York*, 268

4

U.S. 652, 666 (1937). "A scheme of prior restraint gives 'public officials the power to deny use of a forum in advance of actual expression.'" *American Target Advertising, Inc. v. Giani*, 199 F.3d 1241, 1250 (10th Cir. 2000) (quoting *Southeastern Promotions Ltd v. Conrad*, 420 U.S. 546, 553 (1975)). Plaintiffs' claims resemble those of a prior restraint. Because the Goddard Defendants do not argue about whether a cognizable civil rights violation has occurred in their briefs, the court assumes for the purpose of this order that one has. Even if Plaintiffs have plausibly alleged a violation of their rights, Plaintiffs' *Monell* claim falls well short of surviving the motion to dismiss because Plaintiffs have failed to show that the alleged violation was undertaken pursuant to an official policy.

*Monell* overrode a prior holding of the Supreme Court that held 42 U.S.C. § 1983 did not apply to suits against local governments. 436 U.S. at 663. "When execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury [] the government as an entity is responsible under § 1983." *Id.* at 695. There are five ways to plead a *Monell* § 1983 claim:

> (1) the municipality may be liable for a decision by its properly constituted legislative body;
> (2) an official policy exists when the municipal board or agency exercises authority delegated to it by a municipal legislative body;
> (3) actions by those with final decision-making authority for the municipality constitute official policy;
> (4) the municipality may be liable for a constitutional violation resulting from inadequate training when its failure to train the lawless employee reflects a deliberate indifference to the plaintiff's constitutionally-protected rights; or
> (5) the municipality's custom caused the constitutional violation.

*Darr v. Town of Telluride, Colorado*, 495 F.3d 1243, 1256-57 (10th Cir. 2007) (citing cases). The Goddard Defendants allege that Plaintiffs have failed to plead facts under any of the available avenues to properly plead a *Monell* claim. Instead, Plaintiffs state in conclusory fashion that Goddard "established and maintained policies, practices and custom showing deliberate

5

indifference to the constitutional and statutory rights of persons within their jurisdiction." (Doc. 37 at 14-15.) Plaintiffs then launch a barrage of different alleged policies, but none provide sufficient detail for this court to find they are adequately pled. (*Id.* at 15.) The list fails to provide information on what entity promulgated the alleged policy, when they did so, how it is enforced, or any other details that would support a well-pleaded complaint. For example, Plaintiffs recite with stunning brevity, the policy of "[e]ncouraging or permitting retaliation against individuals who raise concerns about public safety or official misconduct." (*Id.*)

Nothing that Plaintiffs offer in their response to the motion to dismiss helps either. Plaintiffs point to an attached "Exhibit A" as "proving systematic coordination between City officials (or persons acting on their behalf) and private parties to suppress citizen complaints across multiple platforms." (Doc. 71 at 3.) The court believes Plaintiffs are referring to Mr. McClain's inability to access the Goddard Facebook page.

Exhibit A is a screenshot from Facebook's messaging function. (Doc. 71-1.) It purports to show a woman named Samantha Blunck messaging another woman named Kayla, about a Facebook post of Mr. McClain's that Blunck did not approve to be posted in a community Facebook group, apparently because it is unrelated to the topic of the group. (*Id.*) Ms. Blunck also tells Kayla that she "just wanted you to have this screenshot in case you need it for anything." (*Id.*) It is largely this statement upon which Plaintiffs rest their *Monell* claims, but they plead no other information that support claims of a policy that violates constitutional rights. Plaintiffs argue that the exhibit "shows final policymaker-level coordination" when City of Goddard individuals "used official information about Plaintiff's arrest; applied content-based restrictions to suppress community safety complaints; and coordinated with private parties using government-obtained intelligence." (*Id.)* The "casual nature" of the constitutional violation apparently showcases

deliberate indifference. (*Id.*) But nothing in the exhibit lends any support to the assertion that the City's actions in blocking the post from Facebook had anything to do with Plaintiff's arrest or his prior complaints.

The Goddard Defendants also suspect that Plaintiffs seek to raise a failure to train claim under *Monell*. This would posit that the alleged constitutional violation (blocking on Facebook) occurred because of Goddard's failure to properly train its employees. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). This is because a policy of poor training is a more "nebulous" assertion. *Id.* (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). To be cognizable, the alleged failure to train must show "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)) (modification in original) (internal quotation marks omitted). "Ordinarily, a plaintiff must prove a pattern of untrained employees' constitutional violations to show deliberate indifference." *George, on behalf of Bradshaw v. Beaver Cty.*, 32 F.4th 1246, 1253 (10th Cir. 2022).

Defendants argue that Plaintiffs have not met their burden. The court finds that Plaintiffs fail to raise a single fact to support a claim of indifference to proper training. There is no alleged prior history of constitutional violations or poor training; there is only the sparsely detailed blocking on Facebook that occurred on one occasion. As explained in the preceding paragraphs, Plaintiffs instead rest on the thin ice of conclusory assertions. (Doc. 37 at 15.) They merely restate their perceived standards for a failure to train claim and state with no support, that the conduct shown in Exhibit A demonstrates "complete ignorance of constitutional limits." (*Id.*) This is insufficient.

Plaintiffs lastly gesture at a single-incident liability failure to train claim by citing *Zorn v. City of Marion*, 774 F.Supp.3d 1279 (D. Kan. 2025). Single-incident liability is a "narrow range" of cases where "evidence of a pre-existing pattern of violations is unnecessary" because the "unconstitutional consequences of a failure to train are highly predictable and patently obvious." *George*, 32 F.4th at 1253 (internal quotation marks and citations omitted). Put simply, the facts Plaintiffs alleged are not those of a single violation that amounts to a policy of failure to train.

Based on the foregoing analysis the court concludes that Plaintiffs have not adequately pled a claim under *Monell* and its progeny; as a consequence, its claims are dismissed as to the Goddard Defendants.

*2. ADA Claims*

The Americans with Disabilities Act prohibits discrimination against disabled individuals in various public and private settings. *See e.g.*, 42 U.S.C. § 12132. Plaintiffs raise Title II ADA claims that relate to their Kansas Open Records Act ("KORA") request for information related to Mr. McClain's arrest. (Doc. 37 at 16.) The Goddard Defendants ask for dismissal of these claims against them because they say that nothing in the ADA count references them or any conduct by them. (Doc. 69 at 6-7.) Plaintiffs retort with three sentences, saying that there is a cognizable ADA claim against the Goddard Defendants. (Doc. 71 at 3.) A review of the third amended complaint reveals that the Goddard Defendants are correct, Count II (the ADA claim) does not mention the Goddard Defendants or attribute any conduct to them. (Doc. 37 at 16.) In their response to the motion to dismiss, Plaintiffs claim that their being blocked from a Goddard Facebook page was "systematic retaliation against Plaintiffs based on their PTSD disabilities." (Doc. 71 at 3.) This one-line allegation is nowhere near sufficient to plead an ADA claim. *See Robertson v. Las Animas Cty. Seriff's Dep't.*, 500 F.3d 1185, 1193 (10th Cir. 2007) ("To state a

8

claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."). Therefore, Plaintiffs' ADA claims are dismissed as to the Goddard Defendants.

### 3. Retaliation Claims Under the ADA and FHA

Retaliation claims are a distinct species of claims under various federal laws. *See e.g.*, 42 U.S.C. § 12303. They prohibit defendants from taking adverse actions against persons who are asserting rights under the corresponding federal statute. *See id.* Here, Plaintiffs advance retaliation claims under the ADA and FHA, claiming that their blocking on Facebook was retaliation for their assertion of rights under each statute. The Goddard Defendants move for dismissal on both retaliation claims. The court considers each claim.

#### a. ADA

Plaintiffs brought their ADA claims under Title II of the ADA. (Doc, 37 at 16.) They also allege claims under the ADA's anti-retaliation provisions codified at 42 U.S.C. § 12203. As an initial matter it is important to point out, as Defendants do, that only public entities are subject to suit under Title II of the ADA. *City and Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 610 (2015). *See also* 42 U.S.C. § 12132, 12131(1) ("The term "public entity" means-- (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority.").

Therefore, retaliation claims against non-public entities, here the Goddard City Facebook Administrator and Mayor of Goddard, cannot survive. Retaliation under the ADA requires "discriminat[ion] against any individual because such individual has opposed any act or practice

9

made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).  Because Title II only makes conduct by public entities unlawful, by definition, it is impossible for a non-public entity to "retaliate" for an individual's opposition to "any act or practice made unlawful by this chapter." *See* 42 U.S.C. § 12203.  Therefore, Plaintiffs' claims against the Mayor and Facebook Administrator are dismissed.  Plaintiffs' arguments to the contrary are unpersuasive in light of the statutory language.

But the City of Goddard is subject to Title II of the ADA.  Defendants contend that Plaintiffs have not properly pled the elements of a retaliation claim premised on a violation of Title II. (Doc. 69 at 7-8.)  To state a retaliation claim a plaintiff must allege: "(1) that she engaged in protected activity; (2) that she suffered a materially adverse action by [Defendants] either after or contemporaneous with her protected activity; and (3) a causal connection between the protected activity and the adverse action." *See Duvall v. Putnam City School Dist.*, 530 F. App'x. 804, 810 (10th Cir. 2013) (explaining elements for a claim for retaliation under section 504 of the Rehabilitation Act of 1973, but courts have held that this provision is functionally identical to the one in the ADA and thus their elements are the same. *See Glenn*, 2019 WL 5423728 at *4.).

Defendants rebut Plaintiffs' complaint by claiming that there is no "causal connection" between the allegedly adverse action and the protected activity. *Duvall*, 530 F. App'x. at 810. According to Defendants, "Plaintiffs have failed to allege facts establishing that he was blocked from Facebook as a result of any disability." (Doc. 69 at 8.)  The court agrees.  A review of the Third Amended Complaint's count III shows sparse reference to the City of Goddard at all.  (Doc. 37 at 16-18.)  The only reference to a causal connection that could apply to the City of Goddard is "close temporal proximity between the protected activities and adverse actions." (Doc. 71 at 17.)

10

This is woefully inadequate to support a claim of retaliation as it is vague and does not connect the exercise of allegedly protected conduct to the allegedly adverse action.

Even a broader reading of Plaintiffs' complaint does not explain how requests for reasonable accommodations made to Sedgwick County Sheriff's Deputies led to alleged blocking on Facebook by the City of Goddard. (*Id.*)  Plaintiffs point to the "Exhibit A" that they have attached to their response to Defendants' motion to dismiss. (Doc. 71-1.)  Assuming without deciding that the court can consider this evidence at the motion to dismiss stage, it does not help Plaintiffs' case.  The screenshot provided at Exhibit A shows a Facebook messenger screen which, as explained above, purports to show someone acting on behalf of the City of Goddard, explaining that she will not approve Plaintiffs' post on a Facebook group. (*Id.*)  In the message, the alleged Goddard Facebook Administrator says "as I understand it, this is the guy who was arrested yesterday…? I don't personally know him, but he has submitted a post to the Goddard group. I won't approve it [because] it is not a community event or related business, but just wanted you to have this screenshot in case you need it for anything." (*Id*) (modification added).  This message does not show a causal connection between Plaintiffs' alleged Facebook block and his request for accommodations under the ADA.

As a result of the foregoing, Plaintiffs' ADA retaliation claims against the Goddard Defendants must fail.

### b. FHA

The Fair Housing Act retaliation provision is contained at 42 U.S.C. § 3617 and provides that: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his

having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

> In order to make out a prima facie case under Section 3617, plaintiff must demonstrate that (1) she is a member of a protected class under the Fair Housing Act; (2) she exercised or enjoyed a right protected by Sections 3603 through 3606, or aided or encouraged others in exercising or enjoying such rights; (3) intentional discrimination motivated defendants' conduct, at least in part; and (4) defendants' conduct constituted coercion, intimidation, a threat, or interference on account of plaintiff having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606.

*Zhu v. Countrywide Realty, Co.*, 165 F.Supp.2d 1181, 1196 (D. Kan. 2001). Plaintiffs have not provided sufficient factual allegations to support these elements. They have not pled that intentional discrimination motivated the Goddard Defendants' alleged blocking on Facebook, nor have they pled that the alleged blocking constituted "coercion, intimidation, a threat, or interference on account of [P]laintiff having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606." *Id.*

Additionally, as Defendants point out, regulated activities under the listed sections include: "Discrimination in the sale or rental of housing and other prohibited practices", *id.* at § 3604, "Discrimination in residential real estate-related transactions", *id.* at § 3605, "Discrimination in the provision of brokerage services", *id.* at § 3606. Upon review of Plaintiffs' complaint, it is virtually indisputable that the Goddard Defendants do not engage in any of the regulated activities vis-à-vis Plaintiffs. Because of this, even if the Goddard Defendants did block Plaintiffs from a Facebook page, it could hardly be said that it was in retaliation for the assertion of rights under the Fair Housing Act. Plaintiffs once again offer no arguments to cure these defects. They simply reply "[t]he coordinated response – blocking, prior restraint, and information sharing – violated 42 U.S.C. § 3617's anti-retaliation provisions." (Doc. 71 at 4.) This does not assist the court at all.

Plaintiffs' anti-retaliation claims under the Fair Housing Act against the Goddard Defendants are therefore dismissed.

    4. *RICO Claims*

The RICO Act provides a private right of action for individuals who have been harmed by an enterprise that violates the RICO statutes. *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1274 (10th Cir. 2014). To adequately plead this right of action a Plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)) (internal quotation marks omitted). Racketeering activity "include[s] a host of so-called predicate acts." *Id.* (internal quotation marks omitted).

Plaintiffs fail to adequately allege multiple elements of the RICO cause of action. For one, as the Goddard Defendants argue, Plaintiffs simply assume that every Defendant is acting in concert but does not allege any facts to demonstrate that they are part of "an enterprise." (Doc. 69 at 9-10.) A review of the complaint confirms that Plaintiffs have merely recited generic statutory language. (Doc. 37 at 18.)

Furthermore, Plaintiffs have failed to adequately allege any racketeering activity by the Goddard Defendants. Racketeering activity "consists of the criminal offenses listed in 18 U.S.C. § 1961(1)" and for the activity to constitute a pattern, there must be "at least two racketeering acts committed within ten years of each other." *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022). It is not clear how blocking someone from a Facebook page constitutes criminal activity under 18 U.S.C. § 1961(1), and Plaintiffs decline to tell the court. (Doc. 37 at 19.) Plaintiffs' complaint simply cites the Retaliation Against a Witness statute, 18 U.S.C. § 1513, and lists the Facebook blocking with scant detail. (Doc. 37 at 19.)

Plaintiffs' response to Defendants' motion to dismiss is of little help either. It simply lists shorthand elements of the RICO statute and then lists various predicate acts with no explanation or factual detail. (Doc. 71 at 4.) The bald rebuttal that "Defendants' argument that 'blocking access to a Facebook page' doesn't constitute enterprise activity ignores that the blocking was part of coordinate suppression documented in Exhibit A", (*Id*), is short on details. The court has already explained Exhibit A above, it will not repeat itself here. But to put it mildly, Exhibit A does not plausibly demonstrate that any of the predicate acts necessary to support a RICO Act claim have been pled here. As a result, Plaintiffs' claims of a RICO violation are insufficiently pled and must be dismissed as to the Goddard Defendants.

B.   **Entries of Default**

Plaintiffs have filed three applications for entry of default. First, they have filed an application for entry of default against unnamed Defendant Jane Doe #2. (Doc. 59.) Second, they have filed applications for entry of default against their former landlord SG Communities and its agent Megan Baugh ("Leasing Defendants"). (Docs. 63, 64.) The court addresses each in turn.

   1. *Unnamed Defendant Jane Doe #2*

Plaintiff moves for entry of default against Jane Doe #2 (Community Corrections Officer present on April 2, 2025) "for failure to plead or otherwise defend this action." (Doc. 59 at 1.) This application is puzzling because neither Plaintiffs nor the court know Defendant Jane Doe's identity. As a result, it is impossible that this Defendant has been properly served. Moreover, Plaintiffs attempt to effect service on Jane Doe #2 via certified mail is deficient under Rule 4(e).

Rule 4(e) provides for several different methods of service. Fed R. Civ. P. 4(e). Delivering a copy of the summons and complaint to an individual's place of employment is not one of them. *Id.* Rule 4 does provide that effective service can be made if service complies with a method of

proper service authorized by the law of the state where the judicial district sits. *Id.* at (e)(1). Kansas law does not permit service by certified mail to an individual's place of employment. K.S.A. § 60-303. Plaintiffs attempted to serve Jane Doe #2 at her place of employment, the jail. (Doc. 48.) She was not served personally, as indicated by the signature of "Agent" on the return receipt. (Doc. 48 at 2.) Therefore, the application for clerk's entry of default against Jane Doe #2 is denied.[1]

*2. SG Communities and Megan Baugh*

Plaintiffs move for entry of default under Rule 55(a) against the Leasing Defendants on the basis of Rule 12(a)(1)(A)(i)'s admonition that a "defendant must serve an answer within 21 days after being served with the summons and complaint." (Docs. 63, 64.) Plaintiffs claim that these Defendants were both properly served on August 26, 2025. (Docs. 55, 56.) This would place the Leasing Defendants' answer deadline on September 16, 2025. (*Id.*) The Leasing Defendants' answer was filed thirteen days after this deadline on September 29, 2025. (Doc. 75.) This, according to Plaintiffs, entitles them to entry of default.

The Leasing Defendants, and this court, disagree. The Leasing Defendants filed an opposition to the entry of default (Doc. 76) and a response (Doc. 83) to Plaintiffs' motion to strike their answer. (Doc. 77.) The Leasing Defendants argue that service *still* has not been properly achieved. (Docs. 76, 83.) The attempts to achieve service in this case are extremely messy. The court will assume that service has been properly made upon both defendants. In any event, their

---

[1] The court notes here that it strongly suspects Plaintiffs are using artificial intelligence ("AI") programs to formulate their briefing. While the use of AI is not prohibited in this court, filers are strictly liable for the content of what they file, regardless of whether AI originally generated the factual and legal contentions therein. Plaintiffs' application for entry of default against Jane Doe #2, (Doc. 59), contained multiple phantom citations, including one to a nonexistent case and a second to a case that has no bearing on the proposition for which it is cited. Plaintiffs are warned to validate the information contained in their briefs or they may violate the duty of candor they owe to the court. Further violations of this duty may lead to sanctions.

untimely answer is excusable neglect. *See* Fed R. Civ. P. 6(b)(1)(B). The Supreme Court has articulated a test for determining whether circumstances show excusable neglect. *See Pioneer Invest. Serv. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380 (1993). The non-exhaustive factors that the Supreme Court directs courts to consider when making an "at bottom [] equitable decision" include: "[1] the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) (citing *Pioneer Investment Serv.*, 507 U.S. at 395) (modifications in original).

The court agrees with the Leasing Defendants that the excusable neglect test favors them. There is virtually no danger of prejudice to Plaintiffs as they have been attempting service, and after six months of litigation, this case is still at the motion to dismiss/answer stage. *See* (Doc. 1.) Second, the length of the delay was only thirteen days; such a short delay incurs only a *de minimis* impact on the schedule of this case. Third, the Leasing Defendants assert that the reason for the delay is "legitimate confusion about service requirements given Plaintiffs' own September 17 admission that 'Defendant Baugh has not been personally served' and that the attempt to serve Defendant [SG Communities] was through Defendant Baugh." (Doc. 83 at 4-5) (quoting Doc. 66 at 1). The court can sympathize with this confusion given the large number of Defendants and repeated service attempts listed on the docket. *See* (Docs. 37, 40-48, 51-53, 55-57, 60, 65.) Fourth, the short time span between the deadline (and the applications for entry of default) and the answer indicates good faith on behalf of the Leasing Defendants.

Additional principles counsel this result. The Leasing Defendants failure to file an answer was not due to "inadvertence, ignorance of the rules, or mistakes construing the rules" which

ordinarily do not constitute excusable neglect. *Torres*, 372 F.3d at 1163 (citing *Pioneer*, 507 U.S. at 392). "Default judgments are generally disfavored in light of the policy that cases should be tried upon their merits whenever reasonably possible." *Tabb v. Mentor Protection Serv. L.L.C.*, No. CIV-17-1130, 2018 WL 3213622 at *1 (W.D. Okla. Jun. 29, 2018) (citing *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (calling default judgments "a harsh sanction.").

As a result of the foregoing, Plaintiffs' applications for default against Defendant Baugh and Defendant SG Communities are denied. Because Ms. Baugh has now answered in the case, the court also denies as moot Plaintiffs' motion for alternative service upon Defendant Baugh. (Doc. 66.)

### C.     Motion to Strike the Answer

For the reasons described in the preceding section, the court denies the portions of Plaintiffs' motion to strike the Leasing Defendants answer related to timeliness. The court considers the rest of the motion below.

*1. Affirmative Defenses*

Plaintiffs first attack several of the Leasing Defendants affirmative defenses listed in their answer. (Doc. 77 at 2-7.) They construe these affirmative defenses as "false statements." *Id.* While the FRCP do provide for motions to strike affirmative defenses to an answer, *see* Fed. R. Civ. P. 12, this function is limited to "insufficient defense[s]" or "redundant, immaterial, impertinent, or scandalous matter[s]." Rule 12(f) is an efficiency tool, to "minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial." *Resolution Trust Corp. v. Schonacher*, 844 F. Supp. 689, 691 (D. Kan. 1994). Resolution of pleadings on motions to strike is "not favored." *See Martinez v. Naranjo*, 328 F.R.D. 581, 591–92 (D.N.M. 2018) ("Striking a pleading or part of a pleading is a drastic remedy and because a motion to strike may often be

17

made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored.") (internal quotation marks and citation omitted). Such motions should "be denied unless the challenged allegations have no possible relation or logical connection to the controversy." *Id.* at 591 (quoting 5C C. Wright and A. Miller, *Federal Practice & Procedure* § 1382, at 433–36 (3d ed. 2004) (internal quotation marks omitted)).

Here Plaintiffs do not claim that the affirmative defenses they challenge bear "no possible relation or logical connection to the controversy." *Id.* Rather, they attack the affirmative defenses as "false statements" and offer evidence to support their "contradictions" of the false statements. (Doc. 77 at 2-7.) This cannot support a motion to strike under the standard as articulated in the preceding paragraph. The proper time to attack affirmative defenses on the merits is after discovery. Therefore, Plaintiffs' motion to strike certain affirmative defenses from the Leasing Defendants answer is denied.

*2. Duty of Candor*

Plaintiffs next contend that these "false statements" they have identified by the Leasing Defendants is a violation of their duty of candor to the court. (Doc. 77 at 7-8.) Therefore, Plaintiffs' assert, the Leasing Defendants should be subject to FRCP Rule 11 sanctions. (*Id.* at 9.) Parties owe a duty of candor to the federal courts. *See* Fed. R. Civ. P. 11(b). When a party presents pleadings, motions, or "other papers" they must certify that: (1) "it is not being presented for an improper purpose"; (2) the claims asserted are warranted by existing law or nonfrivolous arguments modifying the law; (3) "the factual contentions have evidentiary support"; and (4) the denials of factual contentions are warranted on evidence or lack of information. *Id.* The standard is "reasonableness under the circumstances." *Burkhart Through Meeks v. Kinsley Bank*, 804 F.2d

588, 589 (10th Cir. 1986) (quoting Notes of Advisory Committee on Rules to 1983 Amendments to Fed. R. Civ. P. 11).

Plaintiffs' request for sanctions is undermined however by the fact that their motion is not standalone, as required by the federal rules. *Quarrie v. Wells*, No. 17-350, 2019 WL 2107281 at *1 (D.N.M. May 14, 2019) (citing Fed. R. Civ. P. 11(c)(2)). Here, Plaintiffs make their move for sanctions within a motion to strike, which is not permitted. (Doc. 77 at 9.) Accordingly, with the added warning that their Rule 11 claims likely lack merit, the court denies the motion for sanctions contained within the motion to strike.

   3.   *Request for Judicial Notice*

Lastly, Plaintiffs request that the court take judicial notice of "the material contradictions between Defendants' Answer and documentary evidence", a Kansas Supreme Court decision, and "the federal overlay of disability rights law on this landlord-tenant dispute." (*Id.*) The court will decline to take judicial notice. The request for judicial notice of "the material contradictions" Plaintiffs surmise exist is denied because parties are required to admit or deny allegations in a complaint. Fed. R. Civ. P. 8(b)(1)(A)-(B). A court will not determine at the pleadings stage whether Plaintiffs' unauthenticated evidence contradicts denials or admissions in an answer. *Id.* Regarding the request for judicial notice of a Kansas Supreme Court case and federal disability rights law, the court notes that it need not take judicial notice to apply the law to a particular case. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Accordingly, Plaintiffs' request for judicial notice is denied.

   D.   **Motion for Leave to File Conventional Exhibits**

Lastly, the court will deny Plaintiffs' motion for leave to file conventional exhibits in which they seek to submit a flash drive containing police bodycam footage. (Doc. 78.) Plaintiffs seek to file these exhibits to supplement the contentions in their motion to strike. (Doc. 77.) A motion to strike is an improper procedural mechanism to present evidence. The discovery rules govern the presentation of evidence in the case. *See e.g.*, Fed. R. Civ. P. 26. This case has not yet reached discovery. Plaintiffs' motion is denied.

## IV.   Conclusion

For the foregoing reasons, the Goddard Defendants' motion to dismiss (Doc. 68) is GRANTED. The Goddard Defendants' motion to strike Plaintiffs' surreply (Doc. 82) is DENIED as moot. The court also DENIES Plaintiffs' applications for entry of default (Docs. 59, 63, 64), its motion for alternative service on Megan Baugh (Doc. 66), its motion to strike the Leasing Defendants' answer (Doc. 77), and its motion for leave to file conventional exhibits (Doc. 78).

The court also notes that Plaintiffs filed a motion for a temporary restraining order ("TRO") and preliminary injunction back in June of this year. (Doc. 32.) The court notified parties that it would not rule on those motions until all Defendants had been served. (Doc. 35.) However, the date of the alleged harm prompting the motion was June 26, 2025. (Doc. 32 at 1.) That date has come and gone. Therefore, Defendants' motion for a TRO and preliminary injunction (Doc. 32), is DENIED as moot without prejudice. Defendant is free to file another request for TRO should legitimate grounds arise.

IT IS SO ORDERED. Dated this 11th day of December, 2025.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE
